UNITED STATES of America

v.

Sara SALADOFF, Administratrix of Estate of Joseph Saladoff, Dec'd.

Civ. A. No. 32818.

United States District Court
E. D. Pennsylvania.

June 26, 1964.

against defendant's testator, Joseph Saladoff, (taxpayer) [1] for the tax years 1948, 1949 and 1950 in the amounts of $11,108.-06, $8,078.70 and $3,120.10, respectively.

On April 18, 1956, the government accepted taxpayer's offer to compromise these assessments for the sum of $15,-000.00, with $7500.00 to be paid within one year and the balance ($7500.00) payable in monthly installments of $300.00 beginning on the thirteenth month after, the acceptance of the agreement. Also incorporated in the agreement—which was on Standard Form 656C, as required by law [2]—was the following default provision:

> "As a part of this offer, it is agreed that upon notice to the proponent of the acceptance of this offer in compromise of the liability aforesaid, the proponent shall have no right, in the event of default in payment of any installment of principal or interest due under the terms of the offer, to contest in court or otherwise the amount of the liability sought to be compromised, and that in the event of such default the Commissioner of Internal Revenue, at his option, (1) may proceed immediately by suit to collect the entire unpaid balance of the offer, or (2) may disregard the amount of such offer and apply all amounts previously paid thereunder against the amount of the liability sought to be compromised and may, without further notice of any kind, assess and/or collect by distraint or suit (the restrictions against assessment and/or collection being hereby specifically waived) the balance of such liability."

Thus, in short, taxpayer agreed not to contest the original assessed liability in the event of default of any installment due under the settlement.

An examination of the record of payments under the compromise agreement indicates substantial noncompliance with

Louis F. Oberdorfer, Asst. Atty. Gen., Fred B. Ugast, Arnold Miller, Attys. Dept. of Justice, Washington, D. C., Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., for plaintiff.

Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for defendant.

HIGGINBOTHAM, District Judge.

On March 12, 1954, plaintiff-United States (government) made assessments

1. For purposes of this opinion both Joseph Saladoff and his estate shall be designated "taxpayer."

2. Treas.Reg. § 601.23(b) (1955).

its terms. These payments were as follows:

| Date | Amount |
| --- | --- |
| April 8, 1956 | $3,500.00 |
| July 30, 1957 | 400.00 |
| October 25, 1957 | 300.00 |
| July 14, 1958 | 300.00 |
| December 2, 1958 | 200.00 |
| February 5, 1959 | 80.00 |
| May 6, 1959 | 300.00 |
| June 1, 1959 | 538.64 |
| July 10, 1959 | 200.00 |
| August 19, 1959 | 100.00 |
| September 18, 1959 | 100.00 |
| October 19, 1959 | 100.00 |
| November 19, 1959 | 200.00 |
| December 23, 1959 | 200.00 |
| March 24, 1960 | 100.00 |
| April 25, 1960 | 100.00 |
| May 25, 1960 | 100.00 |
| June 27, 1960 | 100.00 |
| July 26, 1960 | 100.00 |
| August 26, 1960 | 100.00 |
| September 27, 1960 | 100.00 |
| October 26, 1960 | 100.00 |
| November 29, 1960 | 100.00 |
| December 28, 1960 | 100.00 |
| January 31, 1961 | 100.00 |
| March 3, 1961 | 100.00 |
| March 30, 1961 | 100.00 |
| April 28, 1961 | 100.00 |
| May 24, 1961 | 50.00 |
| | $7,968.64 |

On October 10, 1961, four months after taxpayer died, the government terminated the agreement because of the failure to make proper payments and thereafter instituted this suit under the default provision for the reinstated amount. Both parties have filed motions for summary judgment and are in agreement that the case is ripe for judgment.

■ There is no question that the April 18, 1956 compromise agreement is a contract and that the taxpayer, as a party to it, is bound by its terms. See Jones v. First Nat. Bldg. Corp., 155 F.2d 815 (10th Cir., 1946); Colorado Milling & Elevator Co. v. Howbert, 57 F.2d 769 (10th Cir. 1932). Therefore, absent a proper defense, taxpayer is liable under the aforementioned default provision for the reinstated amount of the uncompromised tax liability, plus interest, less the amount already paid under the settlement. United States v. Lane, 303 F.2d 1 (5th Cir. 1962).[3]

Taxpayer admits noncompliance with the terms of the original compromise agreement but argues that:

(1) The government is estopped[4] by its nonaction from now taking advantage of the default provision; and

(2) the government's acquiescence in the continued breaches constitutes a modification of the original contract by tacit agreement.

I find both of these defenses to be without merit.

■ Although an estoppel may be worked against the government in certain limited circumstances, the principle should be applied sparingly with caution and restraint. Goldstein v. United States, 227 F.2d 1 (8th Cir. 1962); Vestal v. Commissioner, 80 U.S.App.D.C.

---

3. In Lane, the court stated: "There was nothing illegal, immoral or inequitable in the compromise agreement. It did not provide for any 'forfeiture'. * * * The agreement was precise, it was fair, and it was freely consented to by taxpayer. There is no reason why it should not be enforced as written." (303 F. 2d at 4.) The agreement in Lane was entered on Form 656C, the same form used in this case. See 328 F.2d 602 (5th Cir., Feb. 25, 1964), for subsequent proceedings in the Lane case.

4. The brief for taxpayer used the term estoppel, and at oral argument the terms estoppel and waiver were used interchangeably by counsel for taxpayer. This is understandable since courts have used the term waiver in many different senses (e. g., accord and satisfaction, promissory estoppel, election, laches, acquiescence), including that of estoppel. See 3 Williston, Contracts §§ 678–79 (rev. ed. 1936); 10 Mertens, Taxation § 60.01 (rev. ed. 1958). Even though there are technical differences between the various usages of waiver, the policy enunciated in the latter part of this opinion applies equally to whatever meaning taxpayer's counsel intended the word to have.

264, 152 F.2d 132 (1945). Since taxpayer has the burden of proof on these defenses,[5] it is necessary to allege and prove a substantial change of position to his detriment in reliance upon the government's conduct. See Knapp-Monarch Co. v. Commissioner, 139 F.2d 863 (8th Cir. 1944); Century Electric Co. v. United States, 75 F.2d 589 (8th Cir. 1935). There is no doubt that the estate was taken by surprise when the government terminated the agreement, but surprise is not tantamount to detrimental reliance. I find nothing in taxpayer's allegations or affidavits to indicate how his position was harmed by the government's delay in enforcing the default provision. The reinstatement of the original liability does not constitute a change in taxpayer's position because the government could have requested this amount immediately after the breach of the first installment before the taxpayer made any other payments. And the subsequent payments were not a financial detriment since they were considerably less than the lump sum taxpayer was legally obligated to pay under the default provision and will be credited against that amount. Thus, there is no estoppel.

■ On the theory of modification of the contract by subsequent conduct, taxpayer cites § 680 of Williston on Contracts as authority for the general principal. Williston also states, however, that such modification must contain all of the elements required for the formation of any contract, including consideration and contractual intent. Williston, Contracts, §§ 680–81 (rev. ed. 1936); Cf. United States v. Lane, supra. In discussing the element of consideration, Williston states:

"If in any case the substituted performance given or agreed to be given is different from that originally contracted for, and is not merely less, the later agreement is supported by sufficient consideration. * * * If, however, * * * the substituted performance is less than that originally bargained for, there is no sufficient consideration and if the agreement is enforced, it must be on principles of * * * promissory estoppel. * * *"[6]

Since the alleged substituted performance in the instant case is less than that originally bargained for, there is no fresh consideration, and, as stated previously, there is no estoppel as a substitute. Furthermore, the requisite contractual intent is lacking on the part of the government. There is, therefore, no modification of the terms of the compromise by subsequent conduct.

■ The defenses of estoppel and modification fail for still another reason. The United States cannot be bound by these doctrines in the absence of statutory authority to enter into the contract which is sought to be implied by operation of law. See Utah Power & Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917); Reese v. Gov't. of Virgin Islands, 277 F.2d 329 (3rd Cir. 1960); Sanders v. Commissioner, 225 F. 2d 629 (10th Cir. 1955), cert. den'd, 350 U.S. 967, 76 S.Ct. 435, 100 L.Ed. 839 (1956); 10 Mertens, Taxation § 60.15 (rev. ed. 1958).

■ Section 7122 of the Internal Revenue Code of 1954 sets forth in broad language the authority of the "Secretary [of the Treasury] or his delegate" to enter into compromise agreements. These regulations, which have the force of law,[7] prescribe detailed procedures for the investigation and approval of compromise agreements by designated officials of the

5. Ross v. Commissioner, 169 F.2d 483, 496, 7 A.L.R.2d 719 (1st Cir. 1948) (per Justice Frankfurter sitting as a Circuit Judge); Joyce v. Gentsch, 141 F.2d 891, 896 (6th Cir. 1944); Hull v. Commissioner, 87 F.2d 260, 262 (4th Cir. 1937).

6. Williston, Contracts, § 680 at 1956–66 (rev. ed. 1936).

7. See Commissioner of Internal Revenue v. South Texas Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1947); Fawcus Machine Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397 (1931); Zillmer v. United States, 233 F.2d 912 (7th Cir. 1956).

Internal Revenue Service. This intricate system of formal safeguards was established in order to minimize hasty administrative action and to insure careful deliberation in an important area of tax policy. It is for this reason that the compromise procedures outlined in the Code and Regulations are considered exclusive and require strict compliance. See Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1928); Steiden Stores v. Glenn, 94 F. Supp. 712 (W.D.Ky.1950); George H. Baker, 24 T.C. 1021 (1955).

 In the instant case, there has been no showing that the official—if there was an official—who exercised a watchful eye over taxpayer's payments, and whose nonaction was alleged to have given rise to the estoppel, was authorized to bind the government to a modified compromise agreement. In the absence of such authority, the government cannot be bound by either estoppel, waiver, or implied modification.

Apart from purely legal considerations, there are circumstances which make this case especially appropriate for settlement on the part of the government. In considering the equities of this case counsel for taxpayer maintains with vigor that:

(1) If taxpayer, Joseph Saladoff, had not died the government would not have declared a default, as evidenced by its acceptance of sporadic payments over a period of five years.[8]

(2) Prior to taxpayer's death the government would have accepted the balance due under the compromise agreement ($7,031.36) as a complete settlement.

(3) At the time of taxpayer's death the estate had insufficient funds to satisfy the balance owing under the compromise agreement, and it was solely due to the extraordinary efforts made in behalf of the estate in prosecuting claims in the Philadelphia Orphans' Court that funds became available for payment of the government's present expanded claim.

(4) By the government's belated declaration of default, the estate will now have to pay a sum of $14,338.22, plus interest and costs, as contrasted to the $7,031.36 balance due under the compromise agreement.

These events, counsel asserted at oral argument, makes the government's position "unconscionable":

"I say to Your Honor legally and as a matter of conscience this claim of the Government is outrageous, unconscionable under what happened here in this case because we brought the money in. It wasn't there. We went into court. We said to the Government, 'come on in and prove your claim.' We said to the Government, promised three judges in open court, 'we will do everything we can,' and that is the reason we didn't go through with the final case, is because the Government said, 'we will cooperate in adjusting this matter so there will be something in the estate.'

"Now to come in and at the last minute and say that we want our pound of flesh, we want $22,000 plus interest, I say not only is unsound in law, but an unconscionable position for the Government to take." (Record, p. 16).

 I am moved by this argument. If I were an administrator, from the facts now of record I would without hesitation recommend that the government accept a settlement in an amount considerably less than the maximum obtainable under the default provision.[9] However, my judicial role prevents the exercise of an administrative judgment which should properly balance fairness with the

8. Taxpayer cites a letter written by the District Director on July 24, 1959, which noted the failure of taxpayer to meet the terms of the compromise agreement and suggested that a new arrangement be made.

9. Both Judge Klein of the Orphans' Court, in the collateral proceedings, and this Court have without success urged the government to accept a reasonable settlement.

undisputed power of one's legal position. It is with reluctance, therefore, that I must grant the government's motion for summary judgment and deny the taxpayer's motion for summary judgment.