**UNITED STATES of America**

v.

**Bernard FEINBERG, Administrator of the Estate of Joseph Saladoff, Deceased, Appellant.**

**No. 15036.**

United States Court of Appeals Third Circuit.

Argued March 2, 1965.

Decided Sept. 17, 1965.

Reargued Dec. 8, 1965.

Reargued En Banc Dec. 8, 1966.

Decided on Rehearing Jan. 13, 1967.

Nochem S. Winnet, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa. (William T. Tsiouris, Israel Packel, Philadelphia, Pa., on the brief), for appellant.

Morton Rothschild, Dept. of Justice, Tax Division, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D. C., Drew J. T. O'Keefe, U. S. Atty., Sidney Salkin, Asst. U. S. Atty., on the brief), for appellee.

Before BIGGS, Chief Judge, and FORMAN and FREEDMAN, Circuit Judges.

FORMAN, Circuit Judge.

This is an appeal from the judgment of the United States District Court for the Eastern District of Pennsylvania.[1] Only a sketchy reference to the factual background of the case is required for it is amply detailed in the reported opinion of the District Court.[2]

The United States had assessed the late Joseph Saladoff with income tax liability of $22,303.16 for the years 1948, 1949 and 1950. On November 9, 1955, Mr. Saladoff offered to compromise his liability in writing on the Government Official Form 656C. It provided for the payment of $15,000, of which $7,500 was to be paid within one year from the date of the acceptance and the balance in installments of $300 each month thereafter with interest at six percent on all deferred payments until liquidation of the amount of the compromise. One of the provisions contained in the offer was an agreement by Mr. Saladoff that upon its acceptance, he should have no right in the event of default in any payment of

1. On March 3, 1965, during the pendency of this appeal, a suggestion of the death of Mrs. Sara Saladoff was filed and Mr. Bernard Feinberg was substituted for her as administrator of the estate of Joseph Saladoff. This opinion will be entitled as in the original cause but the title of the judgment in this court will show the substitution.

2. United States v. Saladoff, 233 F.Supp. 255 (1964).

principal or interest due, to contest in court or otherwise, the amount of liability sought to be compromised and that the Commissioner of Internal Revenue had the option to immediately sue for the entire unpaid balance of the offer or to disregard it and collect by distraint or suit the balance of the liability sought to be compromised after applying all amounts previously paid.[3]

On November 15, 1955 the Director of Internal Revenue at Philadelphia received another agreement signed by Mr. Saladoff as a further consideration for the acceptance of the offer in which he committed himself, in addition to the compromise amount of $15,000, to pay, in each of the years 1955 to 1964 inclusive, twenty percent of his annual income in excess of $3,500 and not in excess of $5,000; thirty percent of any excess of $5,000 and up to $10,000; and fifty percent in excess of $10,000. It was also stipulated that he would make annual statements of his income and that the amount of the offer and additional installments should not exceed the liability covered by the offer plus accrued interest to the dates of payments.

On April 18, 1956 the Government accepted the offer in compromise as supported by the collateral agreement. Mr. Saladoff made an immediate payment of $2,500. Thereafter, between July 30, 1957 and May 24, 1961, he made twenty-eight installment payments in amounts ranging from $50.00 to $538.64 each, aggregating $4,468.64, which, with the payment of $3,500, totalled $7,968.64. Except for the $3,500 payment only five installments were in amounts of $300 or more—four were for $200, one for $80, another for $50, and the balance were $100 each.

The record shows only one written communication from the Government to Mr. Saladoff concerning his delinquency in meeting his installments. It was a letter from the District Director of the Internal Revenue Service at Philadelphia dated July 24, 1959 informing him that the Collection Division felt that the payments on his offer in compromise were insufficient and suggesting that he call the office for an appointment to make new arrangements.[4] We know only that thereafter payments were made at the rate of $100 per month except for November and December of 1959 when they were $200 each; that no payment was made in January and February of 1960 and that the last remittance of $50 oc-

---

3. The pertinent provision of the offer in compromise is as follows:
   "As a part of this offer, it is agreed that upon notice to the proponent of the acceptance of this offer in compromise of the liability aforesaid, the proponent shall have no right, in the event of default in payment of any installment of principal or interest due under the terms of the offer, to contest in court or otherwise the amount of the liability sought to be compromised, and that in the event of such default the Commissioner of Internal Revenue, at his option, (1) may proceed immediately by suit to collect the entire unpaid balance of the offer, or (2) may disregard the amount of such offer and apply all amounts previously paid thereunder against the amount of the liability sought to be compromised and may, without further notice of any kind, assess and/or collect by distraint or suit (the restrictions against assessment and/or collection being hereby specifically waived) the balance of such liability. (This paragraph shall not apply where a surety bond is given to secure payment of the amount offered in compromise.)"

4. "U.S. TREASURY DEPARTMENT
   INTERNAL REVENUE SERVICE
   District Director
   1300 Gimbel Building
   Philadelphia 7, Pa.
   July 24, 1959
   Phone: 3-2400          In Reply Refer To
   Ext. 431                    Code C:A:AC:
   Joseph Saladoff
   1319 Duval St.
   Phila., Pa.
   Re: Offer in Compromise
   Dear Mr. Saladoff:
   We suggest you telephone Mr. Eley for an appointment before August 15, 1959 regarding new arrangement for payments on your Offer in Compromise.
   The Collection Division feels that payments are insufficient, therefore new arrangements should be made.
   Very truly yours,
   E. A. McGinnes
   District Director."

curred May 24, 1961, thirteen days before Mr. Saladoff's death on June 6, 1961.

On October 12, 1961 the District Director addressed a letter to the appellant noting that only $7,968.64 had been paid on account of the offer in compromise. The letter declared the offer in default and terminated.[5]

A complaint was filed on February 7, 1963 by the United States against Mrs. Saladoff as Administratrix of the Estate of Joseph Saladoff, Deceased, in the United States District Court for the Eastern District of Pennsylvania alleging that after the reflection of credits amounting to $7,968.64 there was due the United States a balance of unpaid income taxes of the decedent for the years 1948, 1949 and 1950 in the amount of $23,754.97. It sought judgment therefor with interest from May 31, 1962 and costs. The complaint was amended and answers were filed to the original and amended complaints. The United States thereafter filed a motion for summary judg-

ment in the sum of $14,338.22 together with interest and costs. A motion also for summary judgment was made by the administratrix for dismissal of the action.

Argument was heard on both motions at which the Administratrix conceded that judgment should be entered in favor of the United States but only for $7,031.36, the balance she admitted to be due under the offer in compromise. The District Court on June 26, 1964 granted the motion for summary judgment of the United States for $14,338.22 and denied the motion of the Administratrix.[6] In the order therefor he gave the United States leave to file an appropriate motion for interest and costs. Pursuant thereto and upon written admission by the Administratrix of the accuracy of the interest and costs statement of the United States another order was filed on July 22, 1964 adjudging that the Administratrix pay interest of $6,733.40 and costs of $38.24. This appeal is from those orders for judgment.

5. "U.S. TREASURY DEPARTMENT
INTERNAL REVENUE SERVICE
Office of the District Director
Post Office Box 269
Philadelphia, Pa.
Oct. 12, 1961
In Reply Refer To
Au:F:19:LFE

Sarah R. Saladoff, Administratrix
Estate of Joseph Saladoff
1319 Duval Street
Philadelphia, Pennsylvania
Dear Mrs. Saladoff:

This refers to a letter dated April 18, 1956, in which Joseph Saladoff was advised that his installment offer of $15,000, together with waiver of refunds, interest and default agreements, and other provisions on Form 656–C to compromise his liability for income taxes for the years 1948, 1949 and 1950, had been accepted upon the terms proposed.

Under the terms of his offer, the sum of $15,000 was to have been paid as follows:

$7,500 within one year of the date of acceptance of the offer, plus $300 per month beginning on or before the 10th day of the 13th month after notice of acceptance of the offer and on each successive month thereafter until paid in full.

The records of this office indicate that only $7,968.64 has been paid on the offer. Since Joseph Saladoff failed to make payments in accordance with the terms of the offer as set forth in the acceptance letter, there is an absence of mutuality in the intention of the parties and, therefore, no compromise was effected. The arrangements looking to the compromise of Joseph Saladoff's tax liability are hereby terminated.

The default agreement contained in the offer provides that in case of default the Commissioner of Internal Revenue at his option, may disregard the amount of such offer and apply all amounts paid thereunder against the liability sought to be compromised and may, without further notice of any kind, assess and/or collect by levy or suit (the restrictions against assessment and/or collection being specifically waived) the balance of such liability.

The amount paid on the offer will be applied against the liability of Joseph Saladoff.

Very truly yours,
E. A. McGinnes,
District Director."

6. Based on the opinion cited in note 1 supra.

The argument of the appellant raises the basic question: When the United States accepted the taxpayer's payments in amounts smaller than called for by the installment schedule of the compromise agreement for over five years, could it, without due notice, declare a default? Her answer is in the negative. She seeks to support it by reference to a number of cases and texts, a detailed analysis of which would be purposeless here. Suffice it to say, none involves the Government and the collection of its taxes; rather, they refer to contractual relationships between private parties. We do not find them apposite.

The only authorization for the acceptance of a lesser amount of income tax than that duly assessed is found in the provisions of the Internal Revenue Code of 1954 [7] and in the Treasury Regulations promulgated thereunder.[8] Mr. Saladoff sought the compromise of his income taxes for the years 1948, 1949 and 1950 on one of the grounds covered by the regulations, namely, doubt as to the collectibility of the indebtedness.[9] Upon the acceptance of the offer a contract was formed binding the Government to refrain from pressing him for his taxes by either distraint or suit as long as he performed his undertaking to pay the stipulated installments. After the very first installment he seldom met the required payments. It is a fact that the Government accepted the lesser amounts without objection save for its letter of July 24, 1959 [10] and even thereafter it continued to accept some twenty payments of sums less than those called for by the schedule. Finally Mr. Saladoff died and the payments ceased altogether, his estate having made none.

The appellant urges that the tenor of the letter of July 24, 1959 is such as to lead to the inference that the Government, in any event, would have granted Mr. Saladoff more favorable terms of payment had he answered it and that its conduct in accepting many small payments thereafter proves that the Government, in effect, modified the agreement or estopped itself from now claiming the original taxes, particularly since no notice that it would so act had ever been given to Mr. Saladoff or his estate. We cannot agree with appellant's theory. Indeed, the statement in the letter notifying him—"The Collection Division feels that payments are insufficient, therefore new arrangements should be made."—is as readily susceptible of the interpretation that more stringent compliance would be required as more lenient.

When the Government declared the compromise agreement terminated, the time for the liquidation in full of the compromise undertaking had long since expired and only approximately half the compromised indebtedness had been paid. Moreover, a period of over four months elapsed after Mr. Saladoff's death in which no payment whatever was forthcoming from the estate. As was aptly held by Judge Higginbotham the failure of the Government to insist upon installments in the specified amounts or to give notice that unless they were so made the compromise would be terminated worked neither a waiver, modification of its terms, nor an estoppel to the reinstitution of the original assessment. The collection of revenue by the Government is such a collossal operation that it may be expected that incidents of acceptance of smaller than specified payments over even

---

7. "The Secretary or his delegate may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; * * *." 26 U.S.C. § 7122(a) (1965).

8. " * * * As a condition to accepting an offer in compromise, the taxpayer may be required to enter into any collateral agreement or to post any security which is deemed necessary for the protection of the interests of the United States." 26 C.F.R. § 301.7122–1(d) (3) (1961).

9. In his offer of compromise he represented that he was "almost insolvent as he has assets with a forced sale value of approximately $9,500.00 whereas actual and estimated liabilities amount to almost $42,000.00."

10. See note 4 supra.

a period as long as the one in the case at bar can occur. Actions on the part of landlords and mortgagors in systematically accepting less than contractual payments are not to be considered on a par with the Government's collection of its revenue.

The surmise of the appellant is very probably accurate that the Government's declaration of termination and its insistence upon the liquidation of the unpaid balance of the taxes were precipitated by the settlement by the appellant of a suit concerning property of Mr. Saladoff which resulted in possession by the estate of substantial funds upon which the unpaid taxes could fasten. The record is not clear as to the amount of funds which have come into the hands of the appellant but her very resistance to the Government's declaration of default and demand for liquidation of full liability raises the reasonable inference that the funds are now available to wholly or substantially discharge the entire tax liability. The taxing authorities would certainly have been remiss in their duties had they not sought to enforce the breached compromise agreement, the collateral supplement to which made quite clear that the Government was not unqualifiedly forgiving Mr. Saladoff his 1948, 1949 and 1950 taxes. Any feeling entertained by him or the appellant that it was within the power of the taxing authorities by their conduct to waive or modify the terms of the method by which he was to liquidate his taxes was and is badly conceived. The method by which the taxing authorities could enter into compromise agreements with taxpayers was restricted by the limitations placed upon them by the Internal Revenue Act and the Regulations.

The appellant calls attention to the comment found in the dissenting opinion in Federal Crop Ins. Corp. v. Merrill [11] to the effect that those who deal with the Government should do so fairly and that the Government should reciprocate similarly. We find the remarks in the majority opinion more to the point when it charged anyone entering into an agreement with the Government with taking the risk of having accurately ascertained that those who purport to act for the Government stay within the bounds of their authority.[12]

Appellant's lament that she has worked hard to enhance the estate of which much or even all will now be swallowed by the Government's tax claims may inspire sympathy but it hardly furnishes a legal bolster for her resistance to the Government's demand for satisfaction of the entire tax indebtedness. By the clear language of the offer in compromise Mr. Saladoff agreed that, upon his default,

11. Justice Jackson said in this dissent:
"* * * It is very well to say that those who deal with the Government should turn square corners. But there is no reason why the square corners should constitute a one-way street." 332 U.S. 380, 387–388, 68 S.Ct. 1, 5, 92 L.Ed. 10 (1947).

12. Justice Frankfurter speaking for the majority stated:

"The case no doubt presents phases of hardship. We take for granted that, on the basis of what they were told by the Corporation's local agent, the respondents reasonably believed that their entire crop was covered by petitioner's insurance. And so we assume that recovery could be had against a private insurance company. But the Corporation is not a private insurance company. It is too late in the day to urge that the Government is just another private litigant, for purposes of charging it with liability, whenever it takes over a business theretofore conducted by private enterprise or engages in competition with private ventures. Government is not partly public or partly private, depending upon the governmental pedigree of the type of a particular activity or the manner in which the Government conducts it. * * * Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. * * *" (Footnote omitted.) Id. at 383–384, 68 S.Ct. at 2–3.

the Commissioner of Internal Revenue could terminate the compromise agreement. The default is undisputed. The Government cannot be held to the "warning shot" the appellant suggests is required here. And the fact that the Government accepted numerous payments in less than the agreed scheduled amounts did not modify the clear and precise obligation of the agreement.

■ The appellant further submits that a reading of the agreements in their entirety commands that they be construed as distinguishing "between the smaller amount which was agreed to and the larger amount which the Government originally claimed." Under such construction she contends it is clear that the Government has the option "either to accelerate the payments under the compromise agreement with no right to defend as to the agreed compromised amount or to completely terminate the compromise agreement and to sue for the larger amount claimed by the Government just as if there had been no compromise. * * * " To such a claim for the larger amount the appellant insists she should now have the opportunity to defend and calls upon United States v. Lane [13] for support, a case also cited by the appellee and considered by the District Court. That case has striking similarity to the case at bar because it is based upon an offer in compromise on Form 656C and a collateral agreement, identical with the offer on Form 656C and the collateral agreement which Mr. Saladoff signed, except that the amounts of taxes, compromised figure and installment payments were different. To be sure there was a different turn in Lane for there the taxpayer had made all of the installment payments required under the compromise agreement. It was by reason of the failure of the taxpayer Lane subsequently to file annual statements of his income as required by the terms of the collateral agreement that the Government sued him for the unpaid balance of his assessed taxes over and above the com-

promised amount which he had paid. This distinction, however, does not detract from the applicability of the principles enunciated by Chief Judge Tuttle in that case, which may be quoted with equal cogency in this case:

"In the present case, the contracting parties expressed their mutual intention in clear and unmistakable terms. The collateral agreement specifically stated that the default provisions of the main agreement on Form 656-C were to be applicable should the taxpayer fail to perform his obligations with respect to the making of annual payments and filing of sworn statements of annual income. Form 656-C, in turn, expressly provided that the Commissioner, upon default by the taxpayer, could terminate the compromise agreement and proceed to collect the unpaid balance of the original tax liability. This language is so precise, and the intention which it manifests is so evident, as to leave no doubt that the course of action taken by the Government here was fully authorized by the compromise agreement.

"There was nothing illegal, immoral or inequitable in the compromise agreement. It did not provide for any 'forfeiture'. By express provision, the amounts to be paid under the compromise agreement, including both the Form 656-C and the collateral agreement, could not exceed the aggregate amount which the taxpayer conceded that he owed the Government from the start. By allowing the Government to revive the taxpayer's original liability, the taxpayer will not forfeit the amounts he has already paid, for those amounts will be applied to reduce the original liability. The agreement was precise, it was fair, and it was freely consented to by the taxpayer. There is no reason why it should not be enforced as written." [14]

13. 303 F.2d 1 (5 Cir. 1962).

14. Id. at 4.

■ The appellant also stresses that error was committed in awarding summary judgment in favor of the Government in the face of her denial in her answer that she was liable for the taxes for which the Government sued. Such a bare assertion in her answer and an equally abstract denial of any liability greater than the amount of the compromise made in her affidavit opposing the motion for summary judgment does not now raise a genuine material issue of fact sufficient to thwart the granting of the motion for summary judgment. At the time this motion was made (February 3, 1964) the amendment to Federal Rule 56 of Civil Procedure was in effect (July 1, 1963). The amending language is singularly pertinent here:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." [15]

For a clarifying discussion of the effect of the amendment see the recent decision of this court in Robin Construction Company v. United States.[16]

In the face of the affidavits and documents supporting the Government's motion for summary judgment for the unpaid balance of the income taxes assessed for the years 1948, 1949 and 1950, appellant's opposing affidavit sets forth no specific facts showing that there was any genuine issue for a trial as to the correctness of the income tax assessments against Mr. Saladoff for the years in question.[17] Her affidavit, it is true, contained numerous denials that there had been a default in the payments due under the compromise agreement and that the unpaid balance of taxes was due, all based on theories of modification or waiver of the terms of the compromise agreement or by estoppel. These assertions, however, raised only issues of law and they were properly adjudicated in the District Court.

In addition to the matters discussed above we have examined all other points raised by appellant. The summary judgment emerges impervious to any of the appellant's attacks. Hence the order of the United States District Court for the Eastern District of Pennsylvania of June 26, 1964 granting the motion of the Government for summary judgment in its favor and denying the motion of the appellant for summary judgment of dismissal of the complaint will be affirmed.[18] The order of the District Court of July 22, 1964 covering the computation of interest on the judgment will also be affirmed.

## ON REHEARING

Before STALEY, Chief Judge, and BIGGS, McLAUGHLIN, KALODNER, HASTIE, FORMAN, SMITH, FREEDMAN, and SEITZ, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

Following the filing of an opinion on September 17, 1965 by the panel that heard the above appeal a petition for rehearing was presented by the appel-

15. See 6 Moore, Federal Practice, 1964 Supp., p. 79 (2d ed. 1953).

16. 345 F.2d 610, 613–615 (1965).

17. In the motion for summary judgment made by the appellant (as defendant) for dismissal of the action she, herself, asserted that "there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law."

18. The disposition of the case by the District Court on the motions for summary judgment on the first count of the amended complaint made it unnecessary to reach any issue on the second count in which the Government alleged fraud upon the part of Mr. Saladoff in inducing the acceptance of the compromise by misrepresenting his lack of resources.

lant.[1] Argument on the appeal was heard by the original panel. Subsequently reargument was ordered before the court *en banc,* with the parties addressing themselves particularly to the question: whether the compromise agreement with the Commissioner of Internal Revenue into which appellant's decedent entered can be adjudged an effective waiver of the statute of limitations on the assessments?

Upon such reargument the decision reached by the panel was found to be reinforced by the following considerations:

The petition for rehearing now injects into this appeal issues neither raised before the District Court during the pendency of the action nor in the appeal herein, namely:

(1) Whether the 1954 deficiency assessments on taxpayer's 1948 and 1949 tax returns (which together with the assessment for 1950 formed the subject of the compromise agreement involved in this case) were invalid as assessed beyond the three year statute of limitations period, 26 U.S.C. § 6501(a); and

(2) Whether the waiver of this statute found in the compromise agreement is invalid as it was entered into subsequent to the running of the three year period, 26 U.S.C. § 6501(c) (4)? Appellant challenges neither the validity of the deficiency assessment made on the 1950 tax return nor the propriety of the Government's demand to the extent of the

amount stated in the compromise agreement.

No serious denial is made that Paragraph 5 of the Government's complaint and both Paragraph 5 and the Third Affirmative Defense in the answer of appellant's predecessor all relate to a pleading of the six year statute of limitations for commencement of suit (26 U.S.C. § 6502(a) (1)),[2] rather than to a pleading of the three year limitations period for the filing of assessments (26 U.S.C. § 6501(a)).[3] It is plain that there was no intention, prior to the adverse decision of this court, to raise the three year statutory bar to the assessment of taxes for 1948 and 1949 [4] and appellant's suggestion that now the pleadings should be permitted to be so amended falls of its own weight. Such an approach is not helpful for the law governing the existent offer in compromise is dispositive of the case adversely to the appellant.

■■ Section 7122 of Title 26 authorizes the Secretary of the Treasury or his delegate to compromise any civil or criminal case arising under the internal revenue laws prior to, or after, reference to the Department of Justice for prosecution or defense. In the pattern of the Internal Revenue Code this section has no relationship to, or dependency upon, 26 U.S.C. § 6501(a) which prescribes the three year statute of limitations for the assessment of taxes. Staten Island Hygeia Ice & Cold S. Co. v. United States,[5] appears persuasive of the proposition that a compromise agreement and

---

1. Upon the death of Mrs. Sara Saladoff during the pendency of this appeal Mr. Bernard Feinberg was substituted as administrator of the estate of Joseph Saladoff, deceased, and as appellant herein.

2. "Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—

"(1) within 6 years after the assessment of the tax, * * * *"

3. "Except as otherwise provided in this section, the amount of any tax imposed

by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, within 3 years after such tax became due, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period."

4. Indeed in appellant's predecessor's brief on this appeal she maintained her readiness to pay the full amount due under the compromise agreement but contested only a summary judgment for the full amount of the tax.

5. 85 F.2d 68 (2 Cir. 1936).

the waiver of the statute of limitations incorporated therein may be effective even if entered into beyond the limitations period. As stated by the Second Circuit, supra at 70:

> " * * * An agreement of compromise, however, is not an agreement 'which would be within the provisions of subdivisions (c) or (d)' [now § 6501(c) (4)]. They relate respectively to waivers extending the period for assessment and collection. * * * Compromise agreements are authorized by R.S. § 3229 (26 U.S.C. § 1661 and note) [now § 7122]. This contains no requirement that the compromise must be executed before the tax is barred by the statute of limitations, and it would be quite unjustifiable to find in section 278(f) [a transitional section, replaced by § 6501(a)] an expression of congressional intent to add such a condition."

In *Staten Island Hygeia,* the Government was only attempting to enforce the amount of the compromise in the face of the statute of limitations defense, while in the instant case the Government is seeking to invoke a provision of the compromise agreement authorizing suit for the entire amount of the pre-compromise tax liability, because of the default in payment of the compromised amount. This difference is inconsequential for if the running of the statute of limitations were to be considered a bar to the assessment of taxes unless that period were extended prior to its running, a compromise agreement entered into subsequent to its running would not be effective as to even the compromised amount. A fortiori, if the expiration of the statutory period is not a bar to the enforcement of the amount of the compromise even though the statute was waived only subsequent to its running, that statute of limitations may not with any sense of logic be raised to negate another provision of the compromise provision providing for a suit for the full amount of the pre-compromise liability in case of default on the compromised amount. All provisions of the compromise have the same legal force and effect vis-a-vis the statute of limitations defense. The statute of limitations has been waived, therefore, as to all provisions of the compromise agreement.

To give other than this legal effect to a compromise agreement would distort both the compromise as a contract and the place of the contract in the scheme of the Internal Revenue Code. In return for the Government's accepting less than the taxes owing, generally due to a realistic appraisal of a taxpayer's financial situation, a taxpayer agrees to pay the compromised amount, usually in set installments. If a taxpayer employing the statute of limitations defense could defeat a suit for the full amount of the precompromise liability when there is a default in the installments, the taxpayer's obligations would be hollow ones, and mutuality would be absent from the contractual relationship.

As to the statutory scheme, the 26 U.S.C. § 6501(c) exceptions to the three year statute of limitations provide the very reasons why a taxpayer would enter into a compromise agreement subsequent to the running of the statute of limitations. Fearing that the three year period may not be applicable and that the assessment may in fact have been timely in face of the exceptions, it is reasonable to infer that a taxpayer would be willing to waive the three year period in return for a reduction in the amount owing the Government.

Therefore, all provisions of a compromise effected under 26 U.S.C. § 7122 are properly to be considered as not being affected by the statutory bar of 26 U.S.C. § 6501. The independence of 26 U.S.C. § 7122 and compromises authorized by it fit neatly into the statutory scheme. On these considerations we conclude that the judgment of the United States District Court for the Eastern District of Pennsylvania should be affirmed.

FREEDMAN, Circuit Judge (dissenting).

Judge FORMAN's original opinion for the panel demonstrates that aside from

the statute of limitations the government would be entitled by the express terms of the compromise agreement to recover from the taxpayer the full amount of the taxes assessed, with interest and costs, after crediting him with the amount of the payments received under the compromise agreement.

What concerns us now, however, is the claim made in the petition for rehearing, which led us to grant rehearing, first before the panel and then before the court en banc, that some of the assessments are barred by the statute of limitations. The income taxes here involved were assessed on March 12, 1954, for the years 1948, 1949 and 1950, in the amounts of $11,108.06, $8,078.70 and $3,120.10, respectively. The compromise agreement was signed by the taxpayer on November 10, 1955, and was accepted by the government on April 18, 1956. It provided for the installment payments by the taxpayer of the total sum of $15,-000 in compromise of his tax liability for the years 1948, 1949 and 1950. It provided also that in the event of default in payment of any installment of principal or interest due under the agreement, the taxpayer should have no right "to contest in court or otherwise the amount of the liability sought to be compromised, and that in the event of such default the Commissioner of Internal Revenue, at his option, (1) may proceed immediately by suit to collect the entire unpaid balance of the offer, or (2) may disregard the amount of such offer and apply all amounts previously paid thereunder against the amount of the liability sought to be compromised and may, without further notice of any kind, assess and/or collect by distraint or suit (the restrictions against assessment and/or collection being hereby specifically waived) the balance of such liability." The compromise agreement contained a further

provision that the taxpayer "hereby expressly waives: * * * The benefit of any statute of limitations applicable to the assessment and/or collection of the liability sought to be compromised, and agrees to the suspension of the running of the statutory period of limitations on assessment and/or collection for the period during which this offer is pending, or the period during which any installment remains unpaid, and for 1 year thereafter."

Section 6501(a) of Title 26 prescribes a general limitation period for the assessment of taxes of three years after the filing of the return. Section 6501(c) (4) authorizes an extension by agreement of the period of limitations for assessment of taxes, but expressly limits this to agreements entered into "before the expiration of the time prescribed * * *." Further extensions must be made "before the expiration of the period previously agreed upon." [1]

The government has made no factual denial of the claim of the petition for rehearing that the assessments on March 12, 1954 for the 1948 and 1949 taxes were made after the statutory period of limitations had run, although it filed a memorandum in opposition to the petition for rehearing. It has called our attention to the statutory provisions which eliminate the statute of limitations if there was a fraudulent return made with intent to evade tax, or a wilful attempt to defeat or evade tax (§ 6501(c) (1), (2)), and which extend the statutory period of limitations to six years if there was an omission from gross income in excess of twenty-five per cent (§ 6501(e) (1) (A)). But it has interposed no facts which would indicate that these statutory provisions have any application here. Instead the government has argued that the defense of the statute of limitations comes too late because it was not

---

1. Section 6501(c) (4) provides: "Where, before the expiration of the time prescribed in this section for the assessment of any tax * * * both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon."

properly alleged in the pleadings in the court below, as required by Rule 8(c).

The presentation of a new claim or defense for the first time on appeal ordinarily is not favored. But when all is said and done, "Rules of practice and procedure are devised to promote the ends of justice, not to defeat them." Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). While the statute of limitations is an affirmative defense and Rule 12(h) provides that affirmative defenses not pleaded are waived, Rule 15(a) provides that leave to amend the pleadings "shall be freely given when justice so requires." As Judge Forman's opinion shows, the case has come to us on summary judgment. The record reveals that early in the proceedings the government itself, over the taxpayer's objection, obtained leave to amend its complaint by adding a new count alleging that the taxpayer induced the government's acceptance of the compromise offer by means of fraudulent misrepresentations as to his financial condition. The defendant had opposed the amendment on the ground that the claim would be barred by the statute of limitations, but the court below allowed the amendment after pointing out that the defendant could assert the bar of the statute in the answer to the amended complaint.

So far as it is relevant to the problem before us, the answer to the amended complaint referred back to and incorporated the averments of the original answer. Paragraph 5 of the answer to the complaint "denied that the commencement of this suit was timely made." This allegation clearly was made in response to the averment in the comparable paragraph of the complaint, which alleged that by the offer of compromise "the statute of limitations for the commencement of this suit was extended, and the commencement of this suit is therefore timely made." In its Third

Defense the answer expressly alleged: "The alleged right of action set forth in the Complaint did not accrue within the Statute of Limitations as extended by the Offer in Compromise dated November 9, 1955, nor within the time it was extended by the Contract which arose from the acceptance of the said Offer in Compromise."

The taxpayer argues that these allegations adequately alleged the bar of the statute of limitations against the assessment of the taxes on March 12, 1954, for the years 1948 and 1949. It is clear, however, that the original denial was couched in terms which followed the allegation of the complaint and this in turn dealt with the extension by the compromise agreement of the time within which the suit for *collection* of the taxes might be brought. This is far different from be statutory period for the *assessment* of the taxes. The Third Defense, which has just been quoted, is more expansive, but read in the circumstances which show that the defense of the statute of limitations was not thereafter pressed, it is fairly treated as a mere amplification of the earlier allegation and not as a new assertion of the bar of the statute of limitations against the assessment of these taxes.

I would therefore hold that the affirmative defense of the statute of limitations was not adequately pleaded by the defendant. Nevertheless, in the present circumstances I believe that the interests of justice would be served by affording the taxpayer an opportunity to seek an amendment of its answer in the court below.[2] The court below would have the facilities for the determination of any factual controversy regarding the existence of any barriers to the claim of the statute of limitations, either because of earlier compromise agreements whose existence was the subject of some speculation at bar, or for any other proper reason that may be presented.

---

2. 28 U.S.C. § 2106 authorizes us to "remand the cause and * * * require such further proceedings to be had as may be just under the circumstances."

See also Cahill v. New York, N. H. & H. R.R. Co., 351 U.S. 183, 76 S.Ct. 758, 100 L.Ed. 1075 (1956).

It would exercise its enlightened and informed discretion, and unless there appears clear reason to the contrary, I believe it should, in the interests of justice, allow the amendment. In that case, either on renewed motions for summary judgment or on trial, it could readily determine whether any of the assessments are barred by the statute of limitations and what claims nevertheless are still enforceable by the government either as the balance due on the compromise agreement or on assessments validly made within the period of the statute of limitations and now the subject of appropriate action.

Of course, if the statute of limitations had not run, or was no longer available to the taxpayer because of the waiver contained in the compromise agreement, amendment of the pleading would be useless. It is therefore necessary to consider the significant element of the right of the government to assess taxes for the years 1948 and 1949, beyond the three year period fixed by the statute, absent the exceptional circumstances which would either eliminate any applicable statute or prolong the period from three to six years. It seems from the face of the record that in two of the three years involved in the present suit taxes were assessed after the statutory period to do so had expired. Such assessment, it seems to me, could not be validated retroactively by the compromise agreement. Congress has expressly commanded in § 6501(c) (4) that waivers of the statute of limitations are effective only if entered into "before the expiration of the time prescribed * * * for the assessment of any tax." The provision on its face is mandatory and the legislative history emphasizes that Congress intended to forbid assessment or collection of taxes after the running of the statutory period. The House version of § 276(b) of the Revenue Act of 1928, which first dealt explicitly with the subject (now § 6501(c) (4)), expressly provided for waiver of the statute of limitations, "Where before *or after* the expiration of the time prescribed * * * for the assessment of the tax, [the parties] * * * have consented in writing to its assessment after such time. * * * " [3] The Senate Committee on Finance, however, disapproved of this provision. It reported: "In the interest of keeping cases closed after the running of the statute of limitations, the committee has stricken out the provisions in the House bill which make waivers in the case of taxes for 1928 and future years valid when they have been executed after the limitation period has expired." S.Rep. No. 960, 70th Cong., 1st Sess., 31 (1928). The Senate adopted its Committee's proposed amendment to the bill and struck out the words "or after." The House receded and accepted the Senate's amendments.[4] Other sections of the same enactment make it clear that this provision is part of a fabric of revenue legislation by which Congress sought to confer repose on taxpayers after the statute of limitations had run.[5]

In the light of this settled policy, I do not believe that the statutory prescription that a waiver of the statute of limitations must be made before the statute has expired may be obliterated by the simple device of including it as part of a compromise agreement under § 7122. The authority which Congress gave to the secretary or his delegate to enter into compromises of civil or criminal cases does not authorize him to assess or collect taxes after the statutory period has

---

3. H.R. 1, 70th Cong., 1st Sess., § 276(b); see also H.R. Rep. No. 2, 70th Cong., 1st Sess., 29 (1927). Compare, 1 Report of the Joint Committee on Internal Revenue Taxation, 16–17, 71–72 (1927).

4. The conference report reads: "Amendments Nos. 131, 132, 133 and 134: The House bill provided that waivers filed after the expiration of the period of limitation, in the case of income taxes imposed by the new law, should be valid. The Senate amendments eliminate this provision; and the House recedes." H.R. Rep. No. 1882, 70th Cong., 1st Sess., 18 (1928).

5. See § 607 (now § 6401(a)); § 506, amending § 278(c) and (d) of the Revenue Act of 1926.

run. He may not, therefore, confer on himself by the agreement the right to do so.[6] Indeed, a payment made after an untimely assessment is treated by the Internal Revenue Code as an "overpayment"[7] which the taxpayer may recover by suit for refund.[8]

The compromise agreement is valid. Such an agreement swallows up all possible claims, including those for which there is no statute of limitations as well as those for which there are varying periods of limitations. It is authorized by § 7122 and is supported by the consideration that the controversy which it settles might include circumstances extending or even eliminating entirely the statute of limitations. A compromise agreement obligates a taxpayer to the payments required thereunder even though it may later turn out that the claim which the government had made against him was barred by the statute of limitations. This is far different, however, from a provision in a compromise agreement which, beyond the obligation to make the payments therein provided, undertakes in addition to waive the bar of a statute of limitations which has already run against the assessment or collection of the tax. The compromise provision is in harmony with § 7122. The provision waiving the statute of limitations flouts the prohibition of § 6501 (c) (4) and is not necessary to the effectiveness of § 7122. A recognition of this distinction will preserve the right of the taxpayer and the government to compromise possible liability without thereby uprooting the settled Congressional policy of repose from assessment or collection of taxes after the statutory time has

run. In Staten Island Hygeia Ice & Cold Storage Co. v. United States, 85 F.2d 68 (2 Cir. 1936) the taxpayer in a suit for refund sought to avoid a compromise agreement and recover some of the payments made under it. The Court of Appeals rejected the taxpayer's argument that the agreement was unenforceable because it was executed at a time when the collection of the compromised tax was barred by the statute of limitations. In the *Staten Island* case the taxpayer sought to invalidate the compromise agreement. Here the government does not seek recovery of the balance due under the compromise agreement. Instead it sues for the full amount of the taxes assessed even though they had already been compromised by the agreement. Those assessments which at that time were already barred by the statute of limitations may not be revived by the agreement, whether cast in the form of an express waiver of the statute of limitations or as a penalty in the event of default in the payment of the installments fixed in the agreement.

I would therefore vacate the summary judgment and remand the cause to the court below with direction to consider and act upon an application by the defendant for leave to amend his answer to the amended complaint by expressly pleading the bar of the statute of limitations to the assessment of taxes for the years 1948 and 1949; the cause thereafter to proceed according to law.

I am authorized to state that Chief Judge STALEY and Circuit Judge BIGGS concur in the views expressed in this dissent.

6. Compare Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1929) and Uinta Livestock Corp. v. United States, 355 F.2d 761 (10th Cir. 1966) holding settlements valid only if procedure and substance are within § 7122.

7. The 1939 Code, § 3770(a) (2) provided: "Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid after the expiration of the period of limitation properly applicable thereto shall be considered an over-

payment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim." The 1954 Code, § 6401(a) contains a substantially similar provision.

8. Los Angeles Shipbuilding & Drydock Corp. v. United States, 289 F.2d 222, 231–232 (9 Cir. 1961); see McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46 (1937), construing § 607 of the 1928 Act.