549 F.2d 469
 In re John M. DALEY, a witness before the Special March 1974
Grand Jury.
Appeal of ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION
OF the SUPREME COURT OF ILLINOIS.
 No. 76-1657.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 3, 1976.
Decided Feb. 11, 1977.
 
 John C. O'Malley, Chicago, Ill., for appellant.
 Philip B. Kurland, George J. Murtaugh, Jr., William J. Martin, Chicago, Ill., for appellee.
 Before PELL and SPRECHER, Circuit Judges, and DILLIN, District Judge.*
 SPRECHER, Circuit Judge.
 
 
 1
 This case requires resolution of an issue related to the "difficult question" not reached by this court in United States v. Braasch, 505 F.2d 139 (7th Cir. 1974), cert. denied, 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975): whether a federal prosecutor can prohibit the use of a witness' compelled testimony in subsequent state bar disciplinary proceedings involving that witness, through a broad grant of immunity. For reasons set forth below, we hold the conferral of such broad immunity to be beyond Fifth Amendment imperatives and beyond the authority of the federal prosecutor.
 
 
 2
 * In May 1974, the appellee, John M. Daley, who is an attorney licensed to practice law in the State of Illinois, was served with a subpoena which required his appearance and testimony before a Special Grand Jury. Upon being apprised of the substance of this investigation, Daley, after consultation with his attorney, advised the United States Attorney of his intention to assert his Fifth Amendment privilege against self-incrimination if called to testify. The United States Attorney thereupon secured the authorization of the Assistant Attorney General to submit to the district court a request for an order immunizing Daley against the use of his compelled testimony under the provisions of 18 U.S.C. § 6002.[1] In addition to the statutory protections against subsequent use of compelled testimony, however, the application purported to specifically immunize Daley against any use of this testimony in state bar disciplinary proceedings. The United States Attorney offered his opinion that this broad immunity grant was warranted on the ground that "the United States Attorney's Office was concerned because of prior incidents that efforts might be made to pressure the witness Daley by threats of administrative action into not testifying or to testifying falsely. The United States Attorney's Office believed that to insure the integrity of the testimony it was necessary to include such a provision."
 
 
 3
 Daley was apparently assured by his own attorney, as well as by the United States Attorney, of the validity of this unusual immunity grant, the United States Attorney offering his own judgment that, in any event, the statutory immunity authorization, 18 U.S.C. § 6002, interdicted subsequent use of such compelled testimony in bar disciplinary proceedings.
 
 
 4
 On July 18, 1974, Chief Judge Robson, upon being informed of these occurrences, entered an immunity order[2] which provided in pertinent part:
 
 
 5
 It Is Further Ordered that no testimony of the witness, John Daley, compelled under this order (or any information directly or indirectly derived from such testimony or other information) may be used against him in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with this order, in accordance with the provisions of Section 6002, Title 18, United States Code.
 
 
 6
 It Is Further Ordered that no testimony of the witness, John Daley, compelled under this order as above, may be used in any administrative proceeding, disciplinary committee, any bar association or state Supreme Court, in conjunction with any professional disciplinary proceeding or disbarment.
 
 
 7
 Daley testified, in compliance with the immunity order, before the Grand Jury and at the subsequent federal extortion trial of Cook County Commissioner Charles S. Bonk regarding his professional transactions with this public official.[3] Specifically, Daley related that he had transferred to Bonk thousands of dollars in bribes in order to assure the granting of zoning variances favorable to Daley's developer-clients.
 
 
 8
 Thereafter, the appellant, the Illinois Attorney Registration and Disciplinary Commission, instituted an inquiry to determine whether Daley's testimony indicated that professional disciplinary action was warranted. Acting on behalf of the Commission, an Inquiry Board denied Daley's motion to exclude the compelled testimony, while acknowledging that the testimony contained in the transcript of the Bonk trial constituted the premise upon which the inquiry into Daley's professional conduct was based.
 
 
 9
 Appellee next filed a motion in the district court to compel the Commission to comply with the provisions of the immunity order which disallowed any use of Daley's trial testimony in state bar disciplinary proceedings. Chief Judge Parsons ruled on May 28, 1976 that the prohibitions of the immunity order were valid and properly encompassed use by the Commission in its inquiry into Daley's fitness to continue in the practice of law. An order restraining appellant from all direct or indirect use of Daley's testimony was issued. The Commission appeals this decision.
 
 II
 
 10
 We first address the contention that the grant of immunity authorized by the pertinent federal statute, 18 U.S.C. §§ 6001-03, operates to proscribe the use of compelled testimony in subsequent state bar disciplinary proceedings on constitutional grounds. Because the conferral of immunity upon a witness in order to secure his testimony before a court or grand jury effectively abrogates the witness' right to invoke his Fifth Amendment privilege against incriminating himself, a statute authorizing immunity is constitutional only if it affords protection commensurate with that inherent in the Fifth Amendment. Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892); Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). However, the immunity afforded by statute need not be "harmfully and wastefully broader" than the constitutional privilege. Murphy, supra, 378 U.S. at 107, 84 S.Ct. 1594 (White, J., concurring). The statute, deliberately phrased in the language of the Fifth Amendment,[4] immunizes the witness against use of his compelled testimony "in any criminal case," rather than against all potential opprobrium, penalties or disabilities which occur as a consequence of the compelled disclosures. Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896); Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956). Cf. Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968). Thus, the salient constitutional inquiry involved here is whether a state bar disciplinary proceeding is a "criminal case" within the purview of the Fifth Amendment.
 
 
 11
 Denomination of a particular proceeding as either "civil" or "criminal" is not a talismanic exercise, but rather attaches "labels of convenience," In re Gault, 387 U.S. 1, 50, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and tends to inhibit factual inquiry into the nature of the proceeding itself. The Supreme Court has determined that the "sole concern (of the self-incrimination clause) is, as its name indicates, with the danger to a witness forced to give testimony leading to the infliction of 'penalties affixed to criminal acts . . . .' " Ullmann, supra, 350 U.S. at 438-39, 46 S.Ct. at 507, quoting Boyd v. United States, 116 U.S. 616, 634, 6 S.Ct. 524, 29 L.Ed. 746 (1886); accord, Kastigar, supra, 406 U.S. at 453, 92 S.Ct. 1653. In other words, the privilege against self-incrimination functions as a safeguard against rendering an individual criminally liable or subjecting him to prosecution for commission of a crime through the use of testimony coerced from him. Therefore, a "criminal case," for purposes of the invocation of the Fifth Amendment privilege, is one which may result in sanctions being imposed upon a person as a result of his conduct being adjudged violative of the criminal law.
 
 
 12
 The essence of state bar disciplinary proceedings however, is not a resolution regarding the alleged criminality of a person's acts, but rather a determination of the moral fitness of an attorney to continue in the practice of law. Although conduct which could form the basis for a criminal prosecution might also underlie the institution of disciplinary proceedings, the focus is upon gauging an individual's character and fitness, and not upon adjudging the criminality of his prior acts or inflicting punishment for them. As previously stated by this court:
 
 
 13
 (D)isbarment and suspension proceedings are neither civil nor criminal in nature but are special proceedings, sui generis, and result from the inherent power of courts over their officers. Such proceedings are not lawsuits between parties litigant but rather are in the nature of an inquest or inquiry as to the conduct of the respondent. They are not for the purpose of punishment, but rather seek to determine the fitness of an officer of the court to continue in that capacity and to protect the courts and the public from the official ministration of persons unfit to practice. Thus the real question at issue in a disbarment proceeding is the public interest and an attorney's right to continue to practice a profession imbued with public trust.
 
 
 14
 In re Echeles, 430 F.2d 347, 349-50 (7th Cir. 1970) (citations omitted, emphasis added). See also Ex parte Wall, 107 U.S. 265, 288, 2 S.Ct. 569, 27 L.Ed. 552 (1882).
 
 
 15
 Thus, a clear distinction exists between proceedings whose essence is penal, intended to redress criminal wrongs by imposing sentences of imprisonment, other types of detention or commitment, or fines, and proceedings whose purpose is remedial, intended to protect the integrity of the courts and to safeguard the interests of the public by assuring the continued fitness of attorneys licensed by the jurisdiction to practice law. The former type of proceeding is, in actuality, "criminal" in nature and therefore within the ambit of the Fifth Amendment safeguards against self-incrimination; the latter is not.
 
 
 16
 Emphasis upon the penal or remedial aspects of a proceeding, rather than upon its label, for purposes of determining whether the Fifth Amendment prohibits the use of compelled, incriminatory testimony during the course of the proceeding erodes the basis for appellee's reliance upon cases like Boyd, supra, and United States v. United States Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). In Boyd, the relevant customs act allowed the government to institute a civil forfeiture proceeding for the imported property involved, in addition to seeking imprisonment or a fine for violation of the law. The prosecutor waived the indictment, commenced a forfeiture action and then sought to compel disclosures of the accused's books and records on the basis that the forfeiture proceeding involved a clearly civil remedy. The Court held that a case in which the question was whether the revenue laws had been violated is criminal for purposes of invoking the Fifth Amendment privilege; the type of paper filed by the prosecutor did not serve to alter the essence of the proceedings. Accord, Lees v. United States, 150 U.S. 476, 14 S.Ct. 163, 37 L.Ed. 1150 (1893).
 
 
 17
 Similarly, in United States Coin and Currency, supra, the government instituted forfeiture proceedings for money in the possession of an individual arrested for failure to file and pay gambling taxes pursuant to 26 U.S.C. § 4411. In affirming that the privilege against self-incrimination may be invoked in this nominally civil forfeiture proceeding, the Court declared that the forfeiture of the money to be used in gambling was the functional equivalent of the imposition of a fine for the gambling itself:
 
 
 18
 When the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise.
 
 
 19
 401 U.S. at 721-22, 91 S.Ct. at 1044.
 
 
 20
 The impact of Boyd, Lees, and United States Coin and Currency is that government may not abrogate the accused's privilege against self-incrimination by electing the vehicle of a nominally civil proceeding, when in reality, punishment for activity which violates the criminal law is being imposed. This principle is inapposite to state bar disciplinary proceedings, which function not to determine whether specific conduct of an attorney is violative of the criminal law and necessitates the imposition of penal sanctions, but whether the respondent retains the attribute of moral fitness which is requisite to the fulfillment of an attorney's responsibilities to the court which licensed him, as well as to the public.
 
 
 21
 This distinction between proceedings which, in actuality, are cast in penal terms, and those which remain remedial in nature is not impugned by the labelling of state bar disciplinary proceedings as "comparable to a criminal rather than to a civil proceeding" in Erdmann v. Stevens, 458 F.2d 1205, 1209 (2d Cir.), cert. denied, 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972), or as "adversary proceedings of a quasi-criminal nature" in In re Ruffalo, 390 U.S. 544, 551, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968). These cases amply demonstrate the folly of reliance upon nominal labels in the process of constitutional adjudication, for neither case involves issues concerning the application of the privilege against self-incrimination.
 
 
 22
 Erdmann involved a denial by the federal district court of preliminary injunctive relief in a suit brought by an attorney seeking to enjoin state bar disciplinary proceedings against him. The court of appeals affirmed this refusal to intervene in state disciplinary proceedings, comparing the proceedings to criminal cases because the gravity of the state's interest is as pressing in the former instance as in the latter:
 
 
 23
 Indeed the state's responsibility in these matters is primary. . . . (T)he proper functioning of the judicial system depends upon the competence and integrity of the members of the bar and their compliance with appropriate standards of professional responsibility. Thus, when state courts do initiate an inquiry into an attorney's conduct, they deal with a matter of such great importance to the state and its citizens that federal courts should be as slow to intervene in these proceedings as in state criminal proceedings.
 
 
 24
 458 F.2d at 1213 (Lumbard, J., concurring).
 
 
 25
 In re Ruffalo, supra, determined that an attorney is entitled to fair notice of the charge which forms the basis for a disciplinary proceeding before being disbarred. Justice Douglas' denomination of disciplinary proceedings as quasi-criminal is manifestly not crucial to this holding, for as the Court observed, " '(s)uch procedural violation of due process would never pass muster in any normal civil or criminal litigation.' "[5] 390 U.S. at 550-51, 88 S.Ct. at 1226. Thus, neither case is determinative of the issue here: whether state bar disciplinary proceedings are deemed "criminal" cases for purposes of requiring the exclusion of testimony compelled under a grant of immunity.
 
 
 26
 State courts which have considered this precise issue have unanimously responded negatively,[6] refusing to literally interpret Erdmann and Ruffalo. Because the primary function of state bar disciplinary proceedings is remedial, i. e., maintenance of the integrity of the courts and the dignity of the legal profession as well as protection of the public, we agree and hold that the Fifth Amendment privilege against self-incrimination does not proscribe the introduction in state bar disciplinary proceedings of testimony compelled under a grant of immunity. This conclusion is consonant with the holdings of other federal courts that testimony taken pursuant to a statutory authorization for immunity may be introduced as evidence during a subsequent disciplinary proceeding without transgressing the Fifth Amendment privilege. See, e. g., Napolitano v. Ward, 457 F.2d 279 (7th Cir.), cert. denied, 409 U.S. 1037, 93 S.Ct. 512, 34 L.Ed.2d 486 (1972) (proceedings for removal of a judge); Childs v. McCord, 420 F.Supp. 428 (D.Md.1976) (proceedings for revocation of professional engineers' certificates of registration). Cf. Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); Tippett v. Maryland, 436 F.2d 1153 (4th Cir.), cert. granted sub nom. Murel v. Baltimore City Criminal Court, 404 U.S. 999, 92 S.Ct. 567, 30 L.Ed.2d 552 (1971), writ dismissed as improvidently granted, 407 U.S. 355, 92 S.Ct. 2091, 32 L.Ed.2d 79 (1972).
 
 
 27
 It is clear that in enacting 18 U.S.C. §§ 6001-03, Congress is empowered to afford the immunized witness broader protection than that contemplated by the Fifth Amendment. Reina v. United States, 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960); Adams v. Maryland, 347 U.S. 179, 74 S.Ct. 442, 98 L.Ed. 608 (1954). However, the pertinent legislative history evinces a clear intent to restrict the scope of immunity authorized by the statute to that which is constitutionally required.[7] H.R.Rep. No. 1549, 91st Cong., 2d Sess. 42 (1970); 1970 U.S.Code Cong. & Admin.News pp. 4007, 4017. See also II National Commission on Reform of the Federal Criminal Laws, Working Papers, at 1412 (1970). Moreover, because the quality of the practice of law so vitally affects the public welfare, the states maintain a paramount interest in requiring high standards for their attorneys. Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); Theard v. United States, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957). In the absence of evidence of a contrary congressional intent, recognition of the state's interest mitigates against a broad construction of 18 U.S.C. §§ 6001-03 which would serve to preclude remedial action by the states to protect the public interest.[8]
 
 III
 
 28
 Appellee advances an additional constitutional claim, contending that regardless of the nature of the tribunal which attempts to introduce his compelled trial testimony, the Fifth Amendment privilege against self-incrimination forbids the use of any testimony coerced from an individual which may tend to incriminate him. We do not disagree with this argument, since the Supreme Court declared more than 50 years ago in McCarthy v. Arndstein, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924):
 
 
 29
 The privilege (against self-incrimination) is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used. It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it.
 
 
 30
 Id. at 40, 45 S.Ct. at 17 (emphasis added). See also Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967).
 
 
 31
 Although the proceeding in which the privilege is asserted need not be criminal, the information for which the privilege is claimed must harbor the potential of exposing the speaker to a criminal or quasi-criminal charge. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). However, the conferral of statutory immunity upon a witness dissolves the possibility that his testimonial statements may be used, either directly or indirectly, to implicate him criminally. Thus, the immunity protection effectively replaces the constitutional privilege, for,
 
 
 32
 (t)he interdiction of the Fifth Amendment operates only where a witness is asked to incriminate himself, in other words, to give testimony which may possibly expose him to a criminal charge. But if the criminality has been taken away, the Amendment ceases to apply.
 
 
 33
 Ullmann v. United States, 350 U.S. 422, 431, 76 S.Ct. 497, 502, 100 L.Ed. 511 (1956), quoting Hale v. Henkel, 201 U.S. 43, 67, 26 S.Ct. 370, 50 L.Ed. 652 (1906).
 
 
 34
 Appellee is safeguarded against the attachment of criminal liability by the grant of immunity pursuant to 18 U.S.C. § 6002. Since his trial testimony will not "incriminate" him, the Fifth Amendment is no bar to its introduction in state disciplinary proceedings.
 
 IV
 
 35
 In issuing the permanent restraining order of May 28, 1976, the district court declared:
 
 
 36
 The immunity order entered by the Chief Judge of the United States District Court on July 18, 1974 is a valid order which is binding upon the Illinois Attorney Registration and Disciplinary Commission of the Illinois Supreme Court. The Court had the authority to enter this Order pursuant to 28 U.S.C. Section 1651, pursuant to 18 U.S.C. Section 6002, Article VI of the United States Constitution, pursuant to the interests of justice as mandated by the concern of the United States Attorney to preserve the integrity of testimony obtained in connection with criminal investigations.
 
 
 37
 Tr. at 4.
 
 
 38
 Throughout the briefs and oral arguments the parties to this cause have debated the question of whether the federal district court retains sufficient power to support the issuance of an order which conferred immunity far broader than that contemplated by the statutory authority, 18 U.S.C. §§ 6001-03, upon a witness in federal proceedings. However, framing the salient issue in the context of the authority commanded by the federal court not only distorts the concept of immunity as it has developed throughout the course of Fifth Amendment adjudication, but also raises grave questions regarding the constitutionally-mandated separation of powers doctrine as well as vital considerations of federal-state comity. Cf. Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).
 
 
 39
 It has long been recognized that the conferral of immunity upon a witness in order to secure his testimony represents a "rational accommodation" between legitimate, conflicting societal interests. Certainly, the individual witness maintains his privilege to refuse to give testimony which may tend to incriminate him, while the government retains strong interest in compelling the testimony, particularly in situations where, as evidently occurred in the Bonk case, "the only persons capable of giving useful testimony are those implicated in the crime." Kastigar, supra, 406 U.S. at 446, 92 S.Ct. at 1657. In attempting to effectuate Fifth Amendment as well as governmental concerns, immunity "has become part of our constitutional fabric. . . ." Ullmann, supra, 350 U.S. at 438, 76 S.Ct. at 506.
 
 
 40
 We begin with the premise that a witness has no vested right to a grant of immunity. However, once the bar of the privilege against self-incrimination has been raised by the witness, the decision whether to confer immunity in order to facilitate the government's investigation is the product of the balancing of the public need for the particular testimony or documentary information in question against the social cost of granting immunity and thereby precluding the possibility of criminally prosecuting an individual who has violated the criminal law. Therefore, the relative importance of particular testimony to federal law enforcement interests is a judgmental rather than a legal determination, one remaining wholly within the competence of appropriate executive officials, i. e., the United States Attorney with the approval of the Attorney General or his delegate.
 
 
 41
 The legislative history of 18 U.S.C. §§ 6001-03 illustrates that one of the concerns of Congress in revising the prior immunity laws was the clarification of the roles of the various governmental branches in the immunity process so as to avoid potential constitutional conflicts. Working Papers, supra, at 1406. The role of the federal court is restricted to a ministerial function. The court may scrutinize the record to ascertain that a request for immunity is, under the statute, jurisdictionally and procedurally well-founded and accompanied by the approval of the Attorney General. See Ullmann, supra, at 432-34, 76 S.Ct. 497. Under no circumstances, however, may a federal court prescribe immunity on its own initiative, or determine whether application for an immunity order which is both jurisdictionally and procedurally well-founded is necessary, advisable, or reflective of the public interest, for the federal judiciary may not arrogate a prerogative specifically withheld by Congress. Earl v. United States, 124 U.S.App.D.C. 77, 361 F.2d 531 (1966); Ellis v. United States, 135 U.S.App.D.C. 35, 416 F.2d 791 (1969); In re Kilgo, 484 F.2d 1215 (4th Cir. 1973). Accord, Morrison v. United States, 124 U.S.App.D.C. 330, 365 F.2d 521 (1966); United States v. Jenkins, 470 F.2d 1061 (9th Cir. 1972), cert. denied, 411 U.S. 920, 93 S.Ct. 1544, 36 L.Ed.2d 313 (1973); In re Grand Jury Investigation, 486 F.2d 1013 (3d Cir. 1973), cert. denied sub nom. Testa v. United States, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974); In re Lochiatto, 497 F.2d 803 (1st Cir. 1974); United States v. Allstate Mortgage Corp., 507 F.2d 492 (7th Cir. 1974), cert. denied, 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975); United States v. Leyva, 513 F.2d 774 (5th Cir. 1975); Thompson v. Garrison, 516 F.2d 986 (4th Cir.), cert. denied, 423 U.S. 993, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975); Application of the United States Senate Select Committee on Presidential Campaign Act, 361 F.Supp. 1270 (D.D.C.1973); United States ex rel. Berberian v. Cliff, 300 F.Supp. 8 (E.D.Pa.1969). Hence, whether a federal immunity grant, the scope of which encompasses state bar disciplinary proceedings, was necessary or advisable in order to procure Daley's wholly unperjured testimony in the Bonk case remained a determination solely within the competence of the United States Attorney. The federal court could exercise no discretion beyond the statutory authorization.
 
 
 42
 Although it is correct, as appellee contends, that federal courts possess inherent equitable powers over their own process in order to secure judicial proceedings from abuse, United States v. United Fruit Company, 410 F.2d 553 (5th Cir.), cert. denied sub nom. Standard Fruit and Steamship Co. v. United States, 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969), the immunity order which is issued pursuant to 18 U.S.C. § 6003 is not a matter of judicial process or judicial discretion. The immunity power originates in the legislature, United States v. Bryan, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884 (1950); its exercise is delegated solely to the executive. Earl, supra; Ellis, supra; Kilgo, supra. Consequently, the determination of whether the conferral of immunity is proper in a particular case "requires intimate familiarity with the nature and details of the investigation and the background of the witness." Murphy v. Waterfront Commission, 378 U.S. 52, 100, 84 S.Ct. 1594, 1614, 12 L.Ed.2d 678 (1964) (White, J., concurring). This is knowledge to which the federal prosecutor, and not the federal court, is privy, and it is therefore the authority of the United States Attorney to confer such extensive immunity which must be scrutinized.
 
 
 43
 Cast in these terms, the crucial question becomes whether the federal prosecutor, as the representative of the executive, retains under either statutory or inherent authority the power to declare a federal witness protected by such sweeping immunity. Statutory authority is clearly absent, for as previously noted, the legislative history evinces a clear intent to circumscribe the permissible scope of immunity to that mandated by the Fifth Amendment, and to preserve intact the effectiveness of state attempts to safeguard the public welfare through remedial action. H.R.Rep. No. 1549, 91st Cong., 2d Sess. 42 (1970); 1970 U.S.Code Cong. & Admin.News, pp. 4007, 4017. See also Working Papers, supra, at 1412, 1432-33. Cf. Kastigar, supra, 406 U.S. at 453-55, 92 S.Ct. 1653. Congress has equipped the federal prosecutor with potent tools, authorizing him to subject an evasive or prevaricating witness to a prosecution for perjury[9] or the contempt sanction.[10] These tools he may wield uninhibitedly in order to assure the integrity of the testimony compelled under 18 U.S.C. §§ 6001-03. The prosecutor may not, however, usurp, under the guise of statutory authorization, means far in excess of Fifth Amendment mandates which Congress neither contemplated nor intended.
 
 
 44
 Viewing the immunity grant in its proper perspective as a powerful executive implement, it must be recognized that prosecutorial agreement may effectively function, extra-statute, to confer immunity other than through a legislatively-authorized method. Through the exercise of his inherent discretion, the federal prosecutor retains control over the nature and scope of immunity granted. However, in promising to refrain from prosecution in order to secure a witness' cooperation, the federal prosecutor must act within the ambit of his authority, cf. People v. Ford, 99 U.S. 594, 25 L.Ed. 399 (1878), and may not permissibly bind officials in jurisdictions within which he possesses no right of action. Cf. United States v. Boulier, 359 F.Supp. 165 (E.D.N.Y.), aff'd, United States v. Nathan, 476 F.2d 456 (2d Cir. 1973), cert. denied, Nathan v. United States, 414 U.S. 823, 94 S.Ct. 171, 38 L.Ed.2d 56 (1974). An agreement between Daley and the United States Attorney that the former would be shielded by informal transactional immunity from all federal prosecution stemming from incidents about which information was gleaned from Daley's testimony represents the extent of the prosecutor's innate power and discretion. In purporting to confer immunity which superseded both the pertinent statutory delegation of authority and the inherent discretionary powers of the federal prosecutor, through encompassing state remedial proceedings not contemplated by the Fifth Amendment, the United States Attorney acted outside the scope of his jurisdiction and utterly without authorization of law.[11] His actions are therefore bereft of validity. Cf. Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958).
 
 
 45
 Appellee asserts, however, that in attempting to preclude the legitimate functioning of a state bar disciplinary committee, over which no federal jurisdiction prevails, the federal prosecutor accomplishes no more than in the case where, through a grant of immunity, the prosecutor may effectively preempt the possibility of state use of the immunized testimony in state criminal proceedings. The fallaciousness of such reasoning is readily apparent, for in the latter case it is the constitutional mandate of the Fifth Amendment, rather than the machinations of the federal prosecutor, which operates to preclude subsequent state use of federally-compelled testimony in state criminal prosecutions. Murphy, supra.
 
 V
 
 46
 Appellee's final contention is that the federal court is estopped from refusal to enforce the May 28, 1976 and July 18, 1974 immunity orders issued below on due process grounds. Appellee asserts that he replied upon the validity of these judicial pronouncements in determining whether to comply with the immunity order by testifying to the full extent of his knowledge, or whether to persist in his refusal to testify and thereby risk the sanction of contempt.[12] His claim, then, is that his decision to accept the proffered immunity was based upon the understanding, which he shared with the court and the United States Attorney that the immunity extended to use of his testimony in state bar disciplinary proceedings. For the federal court to elicit this choice from appellee and then subsequently retract its promise to him is the claimed due process contravention.
 
 
 47
 We have already determined that the immunity orders issued below represented invalid acts on the part of the United States Attorney beyond the statutory and inherent authority of the federal prosecutor which the district court should have refused to ratify on jurisdictional grounds. The superficially appealing logic of appellee's position regarding his due process rights is readily dispelled upon closer scrutiny of its underlying premises. The characterization of the position of an immunized witness who possesses information deemed necessary by the government as entitling the witness to freely "choose" whether to divulge the information or to be incarcerated for contempt represents a transmogrification of the fundamental concept that the "duty to give testimony before a duly constituted tribunal" devolves upon each individual, "unless he invokes some valid legal exemption in withholding it." Ullmann, supra, 350 U.S. at 439 n. 15, 76 S.Ct. at 507. See also Brown v. Walker, 161 U.S. 591, 600, 16 S.Ct. 644, 40 L.Ed. 819 (1896); Piemonte v. United States, 367 U.S. 556, 559 n. 2, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961). Conferral of immunity which was coextensive with Daley's privilege against self-incrimination effectively removed the taint of criminality from his testimony, as well as any valid reason for assertion of the privilege. United States v. Cappetto, 502 F.2d 1351, 1359 (7th Cir. 1974), cert. denied, 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975). Simply stated, any "choice" regarding testimony remaining to Daley vanished upon the grant of immunity pursuant to 18 U.S.C. §§ 6001-03. A grant of immunity under the statute, which is only as broad as the privilege against self-incrimination, is sufficient to compel whatever testimony is deemed necessary by the federal prosecutor; since there is no "choice" in any sense to be made by an immunized witness, the breadth of the scope of immunity conferred cannot legitimately be claimed as a "factor" in an illusory "choice" of testifying or being adjudged in contempt.
 
 
 48
 As previously stated, false or evasive testimony subjects an immunized witness to prosecution for perjury or to the sanction of contempt. Moreover, as expatiated by the Second Circuit, false or evasive testimony constitutes a breach of the immunity provisions which expunges the concomitant protections.
 
 
 49
 The theory of immunity statutes is that in return for his surrender of his Fifth Amendment right to remain silent lest he incriminate himself, the witness is promised that he will not be prosecuted based on the inculpatory evidence he gives in exchange. However, the bargain struck is conditional upon the witness who is under oath telling the truth. If he gives false testimony, it is not compelled at all. In that case, the testimony given not only violates his oath, but is not the incriminatory truth which the Constitution was intended to protect. Thus, the agreement is breached and the testimony falls outside the constitutional privilege.
 
 
 50
 United States v. Tramunti, 500 F.2d 1334, 1342 (2d Cir.), cert. denied, 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974).
 
 
 51
 A grant of immunity which was coterminous with the statutory provisions would have been sufficient to compel Daley to divulge the information regarding his professional transactions with Bonk which he ultimately provided. Daley's right to assert his privilege against self-incrimination entitled him to no more protection than that mandated by the Fifth Amendment, and the same testimony could have been compelled by a grant which promised no more than that. Accordingly, we find no due process contravention in the fact that the immunity protection actually afforded Daley was narrower in scope than that promised him.
 
 
 52
 The order entered by the district court restraining appellant from use of Daley's testimony in state bar disciplinary proceedings is hereby
 
 
 53
 Reversed.
 
 
 54
 PELL, Circuit Judge, concurring.
 
 
 55
 I concur with considerable reluctance in the opinion authored by Judge Sprecher. This in no way reflects upon the thorough analysis of the issue and the correct and scholarly application of the law thereto found in that opinion. My reluctance stems from the uncomfortable feeling that there is an inherent injustice under law when a witness gives testimony under the compulsion of contempt and that testimony is to be used against him in a disciplinary proceeding which could result in a substantial penalty against him although two of the three branches of the federal government have explicitly assured the witness that the compelled testimony cannot be used against him in a disciplinary proceeding, one such assurance being in the form of a judgment of a United States court.
 
 
 56
 Notwithstanding that Judge Sprecher's carefully drawn opinion demonstrates beyond any real argument that the result I have just described is the inexorable one under our law, I have nevertheless made a reexamination of the controlling authorities from the point of view of determining whether the above result is necessary, and I have concluded it is.
 
 
 57
 Little purpose is served by retracing the route that the principal opinion has so fully traversed. I therefore add only a few observations garnered along the way. Certainly the initial one is that we are dealing with a first impression issue. There are cases in which the damaging testimony has been used in disciplinary proceedings notwithstanding a grant of immunity. See the Annotation collecting such cases, 62 A.L.R.3d 1145 (1975). The holding of these cases is that the testimony may be used. No case, however, of which I am aware, had the additional element of purporting to immunize explicitly against use in disciplinary proceedings.
 
 
 58
 Daley argues, with at least surface persuasiveness, that the federal government cannot refuse to enforce the order it has issued which has put the attorney in the particular position in which he now finds himself, or, in other words, that the federal government, presumably including the federal courts, is now estopped from not using its authority to protect the appellee in the way it said it would. Certainly here a fair case can be made out of substantial detriment by a change of position in reliance on the government's conduct. See United States v. Saladoff, 233 F.Supp. 255, 258 (E.D.Pa.1964), aff'd. sub nom. United States v. Feinberg, 372 F.2d 352 (3d Cir. 1967) (en banc). Applicability of the doctrine of estoppel would seem to end there. At the outset we have the general rule that the United States is not subject to an estoppel which impedes the exercise of governmental functions as contrasted with proprietary ones. 28 Am.Jur.2d Estoppel and Waiver § 132, at 799-802 (1966). Aside from this underlying general proposition, it would appear that estoppel would scarcely be applicable if the fundamental basis for the estoppel, here the district court judgment, was itself without a foundation of legality. That brings us back to the demonstration contained in Judge Sprecher's opinion that the United States Attorney exceeded his statutory power with regard to the disciplinary immunity.
 
 
 59
 The question might conceivably remain, however, whether the court itself had some inherent power outside of the immunity statute here involved. The court's function insofar as the statutory procedures are concerned would appear to be purely ministerial, cf. Application of United States Senate Select Committee on Presidential Campaign Activities, 361 F.Supp. 1270 (D.D.C.1973); however, Daley argues that the court itself was justified in entering the order of immunity and taking the action now directly under review upon several bases: 28 U.S.C. § 2283, which permits the issuance of injunctions where necessary in aid of a district court's jurisdiction or to protect or effectuate its judgments; the All Writs Act, again as a proper means for protecting its jurisdiction as it asserted it in the original immunity order; and inherent authority to protect the integrity of its processes. I find myself unable to agree that any of these bases would justify the injunctive relief here under review unless the original order of immunity was legally deserving of protection. Returning therefore to that original order, there was no basis for its entry unless there was an inherent power for the action.
 
 
 60
 No direct authority has come to my attention dealing with the courts' power to grant immunity aside from the ministerial function relating to applications from the United States Attorney. The suggestions, at least in the cases, would clearly indicate that the exercise of the determination to grant immunity is not for the courts. Application, supra at 1277, refers to not usurping the constitutional power of a coordinate branch, in this case the Executive. From the same source we find a reference to the judicial function being the determination of "right" or "wrong" while a decision to grant immunity is not "right" or "wrong" but purely a matter of discretion. Id. at 1278. In United States v. Rand, 308 F.Supp. 1231, 1236-37 (N.D.Ohio 1970), a question was involved as to the protective scope of the claimed immunity agreement and whether the court had acquiesced in the grant of the immunity. The court observed that "(w)hether this silence was an acquiescence is unnecessary to decide. It was the Government to whom (the defendants) looked for immunity, not the Court." Id. at 1237.[1]
 
 
 61
 While perhaps these observations were keyed to the fact that what was before the court in the aforementioned cases was the matter of the scope of the courts' function under particular immunity statutes, the statement of then Judge Burger in Earl v. United States, 124 U.S.App.D.C. 77, 361 F.2d 531, 534 (1966), cert. denied, 388 U.S. 921, 87 S.Ct. 2121, 18 L.Ed.2d 1370 (1967), clearly places the ultimate responsibility for the manner in which immunity would be granted upon the Legislative branch:
 
 
 62
 What Appellant asks this Court to do is command the Executive Branch of government to exercise the statutory power of the Executive to grant immunity in order to secure relevant testimony. This power is not inherent in the Executive and surely is not inherent in the judiciary. In the context of criminal justice it is one of the highest forms of discretion conferred by Congress on the Executive, i. e., a decision to give formal and binding absolution in a judicial proceeding to insure that an individual's testimony will be compelled without subjecting him to criminal prosecution for what he may say.
 
 
 63
 See also a discussion of authorities to the effect that the grant of the power to give immunity must come from the Legislature in Apodaca v. Viramontes, 53 N.M. 513, 212 P.2d 425 (1949).
 
 
 64
 Finally, it might be argued that there was in law an agreement between the United States Attorney and Daley that Daley would not be subject to disciplinary proceedings, which agreements should be enforced. Some cases apparently speak of the immunity grant in contractual terms. 22 C.J.S. Criminal Law § 46(7), at 179-80 (1961). This again, however, is predicated upon a constitutional or statutory provision which is non-existent in the present case. Nearly a century ago, the Supreme Court in the Whiskey Cases, 99 U.S. (9 Otto) 594, 25 L.Ed. 399 (1878), held that the United States Attorney had no authority to enter an agreement that persons accused of an offense against the United States would not be prosecuted or their property subjected to condemnation in consideration of the defendants testifying against their co-conspirators.
 
 
 65
 In sum, if policy factors involved in the public interest and concern in fighting crime, when balanced against the public interest in the integrity of the legal profession, are deemed to be stronger on the side of the former, the answer to that effect must come from the Congress.
 
 
 
 *
 Honorable S. Hugh Dillin, United States District Judge for the Southern District of Indiana, is sitting by designation
 
 
 [1]
 This statute provides:
 Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to
 (1) a court or grand jury of the United States,
 (2) an agency of the United States, or
 (3) either House of Congress, a joint committee of the two Houses, or a committee or subcommittee of either House, and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.
 
 
 [2]
 The court acted pursuant to 18 U.S.C. § 6003 which provides:
 (a) in the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.
 (b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection (a) of this section when in his judgment
 (1) the testimony or other information from such individual may be necessary to the public interest; and
 (2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.
 
 
 [3]
 United States v. Charles S. Bonk, No. 75-CR-88 (N.D.Ill., June 6, 1975). The jury ultimately acquitted Bonk of 12 counts of extortion and five counts of income tax fraud
 
 
 [4]
 See II National Commission on Reform of the Federal Criminal Laws, Working Papers, at 1416 (1970)
 
 
 [5]
 We further note that this determination that certain procedural due process safeguards are required in state bar disciplinary proceedings neither transforms those proceedings into "criminal" matters nor mandates the incorporation of all procedural due process safeguards. Cf. McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). Thus, state bar disciplinary proceedings "shall be conducted according to the practice of civil cases" with the standard of proof in all hearings fixed as "clear and convincing evidence." Ill.Rev.Stat. ch. 110A, § 753(c) (1975). Furthermore, the attorney-respondent in a state disciplinary proceeding may be called to testify and examined as an adverse witness pursuant to the Illinois Civil Practice Act, Ill.Rev.Stat. ch. 110, § 60 (1975). In re Royal, 29 Ill.2d 458, 194 N.E.2d 242 (1963)
 
 
 [6]
 See, e. g. Maryland State Bar Ass'n. v. Sugarman, 273 Md. 306, 329 A.2d 1 (1974), cert. denied, 420 U.S. 974, 95 S.Ct. 1397, 43 L.Ed.2d 654 (1975); Committee on Legal Ethics of the West Virginia State Bar v. Graziani, 200 S.E.2d 353 (W.Va.), cert. denied, 416 U.S. 995, 94 S.Ct. 2410, 40 L.Ed.2d 774 (1973); In re Schwarz, 51 Ill.2d 334, 282 N.E.2d 689, cert. denied, 409 U.S. 1047, 93 S.Ct. 527, 34 L.Ed.2d 499 (1972); Louisiana State Bar Ass'n. v. Ponder, 263 La. 743, 269 So.2d 228 (1972); Kelly v. Greason, 23 N.Y.2d 368, 296 N.Y.S.2d 937, 244 N.E.2d 456 (1968); Black v. State Bar of California, 7 Cal.3d 676, 103 Cal.Rptr. 288, 499 P.2d 968 (1968); Cate v. Rivers, 246 S.C. 35, 142 S.E.2d 369 (1965); Florida State Bar v. Massfeller, 170 So.2d 834 (Fla.1974); In re Pennica, 36 N.J. 401, 177 A.2d 721 (1962); In re Rouss, 221 N.Y. 81, 116 N.E. 782 (1917), cert. denied, 246 U.S. 661, 38 S.Ct. 332, 62 L.Ed. 927 (1918)
 
 
 [7]
 To achieve this end, language in earlier immunity statutes to the effect that an immunized witness attained protection from all "penalties and forfeitures" resulting from subsequent use of his testimony was deleted. II National Commission on Reform of the Federal Criminal Laws, Working Papers, at 1416
 
 
 [8]
 See Working Papers, supra, at 1432-33, where it stated:
 Because of the major public interest considerations involved in the various fields of licensing, particularly in the areas of health and safety, there should be an effort to avoid immunity statute clauses which may be construed not only to bar punitive action, but also to bar remedial actions to protect the public. . . . The aim should be to draft language which will avert this danger, while at the same time protecting a witness from incriminating or penal consequences flowing from his testimony. This purpose can be accomplished by making use restriction the central concept in compulsory testimony acts and eliminating the "penalty or forfeiture" phrase.
 
 
 [9]
 18 U.S.C. § 6002
 
 
 [10]
 28 U.S.C. § 1826 provides:
 (a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of
 (1) the court proceeding, or
 (2) the term of the grand jury, including extensions, before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.
 (b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but no later than thirty days from the filing of such appeal.
 
 
 [11]
 Although the federal courts clearly may not supervise or direct the executive department in the manner or mode in which it performs its functions, the judicial power extends to the prevention of members of the executive branch from assuming jurisdiction in areas in which there exists no legal right to act. Giancana v. Hoover, 322 F.2d 789 (7th Cir. 1963)
 
 
 [12]
 Appellee's statement to the effect that federal officials were "further of the view that immunity against use of Appellee's testimony in criminal prosecution alone was not sufficient to secure Appellee's uninhibited testimony," Appellee's Brief, at 21, indicates that Daley may have also contemplated divulging information which was less than complete
 
 
 [1]
 Rand, which held that the individuals were entitled to rely upon the assurances of the United States Attorney, is of no help to Daley as the subsequent testing of the validity of the grant of immunity in Rand was in the context of a federal criminal trial