**In re SEALED CASE.**

No. 85–5755.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 6, 1986.

Decided May 20, 1986.

---

Kenneth J. Melilli, Asst. U.S. Atty., Bar of District of Columbia, pro hac vice by special leave of this court, with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Thomas J. Tourish, Jr. and David Eisenberg, Asst. U.S. Attys., Washington, D.C., were on brief, for appellant.

W. Gary Kohlman, Washington, D.C., for appellee.

Before WALD, SCALIA and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

The government appeals an order of the United States District Court for the District of Columbia quashing a subpoena that required appellee to produce tape recordings of conversations relevant to a pending criminal investigation. The District Court quashed the subpoena because, in its view, the immunity offered by the government under 18 U.S.C. § 6002 (1982) was not coextensive with appellee's fifth amendment privilege not to produce the tapes. The sole issue for our determination is whether that is so.

## I

Late in 1984, appellee was served with a grand jury subpoena *duces tecum* demanding production of "all tapes concerning any recorded conversation between yourself and any other person(s)" pertaining to a certain matter. Appellee promptly moved for an order quashing the subpoena on the ground of fifth amendment privilege against self-incrimination with respect to both (1) the contents of the tapes and (2) the act of producing them. On December 14, 1984, the District Court granted the motion on the latter ground alone. *See In re Grand Jury Subpoena*, Misc. No. 84–276 (D.D.C. Dec. 14, 1984). Applying the analysis set forth by the Supreme Court in *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), and *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the court held that the act of producing the tapes was incriminating, in that it would convey information not already known to the government about the existence of the tapes. For the purpose of this appeal, the government concedes that the act of production is privileged.

Several months after the court issued its order, appellee was again served with a grand jury subpoena *duces tecum* demanding production of the tapes. On May 3, 1985, appellee moved to quash this second subpoena. In response, the government moved under 18 U.S.C. §§ 6002–6003 (1982) for an order compelling appellee to produce the tapes under a grant of use immunity with respect to the act of production. The District Court again quashed the subpoena, on the ground that the government's offer of immunity was "specious."

> The existence of the tapes is in dispute. If [appellee] produces the tapes—even under a statutory grant of immunity— the existence of the tapes will be beyond doubt. If the government later seeks to use any incriminating contents of the tapes against [appellee] in a criminal trial, it will not be able to establish the existence of the tapes by an independent source. Nor will it have to do so as the existence of the tapes will be a foregone conclusion. Therefore, the government's offer of immunity is illusory.

*In re Grand Jury Subpoena*, Misc. No. 84–276, slip op. at 2 (D.D.C. May 29, 1985).

The government appeals pursuant to 18 U.S.C. § 3731 (1982), arguing that the immunity offered fully protected appellee's fifth amendment privilege and therefore required production of the tapes.

## II

Prior to 1970, over 50 federal immunity statutes were in force. *Kastigar v. United*

*States*, 406 U.S. 441, 447, 92 S.Ct. 1653, 1658, 32 L.Ed.2d 212 (1972). In order to regularize the immunization process and strengthen the hand of federal prosecutors, Congress enacted the Organized Crime Control Act of 1970, Pub.L. No. 91–452, § 201(a), 84 Stat. 922, 926–28 (codified at 18 U.S.C. §§ 6001–6005 (1982)). Under the scheme established by that Act, when a United States Attorney believes that a witness's testimony which may be necessary to the public interest is likely to be withheld in reliance upon the privilege against self-incrimination, he may, with the approval of the Attorney General (or one of his designees), apply to a district court for an order compelling the witness to testify. *See* 18 U.S.C. § 6003(b). Upon such application, the statute provides that the court "*shall issue* ... an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination." 18 U.S.C. § 6003(a) (emphasis added). A witness ordered to testify

> *may not refuse* to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

18 U.S.C. § 6002 (emphasis added).

Obviously, such a scheme would present grave constitutional difficulties unless the immunity provided under the statute was completely sufficient to preserve witnesses' fifth amendment rights. But any doubts on that score were laid to rest by the Supreme Court in *Kastigar*. There the witness refused to testify after being ordered to do so, contending that the scope of immunity provided by the statute was inadequate. The Supreme Court rejected the claim, holding that § 6002 immunity from use and derivative use "is coextensive with the scope of the privilege against self-in-

crimination, and therefore is sufficient to compel testimony over a claim of the privilege." *Id.* at 453, 92 S.Ct. at 1661. Since *Kastigar*, the Supreme Court and the courts of appeals have repeatedly instructed that the immunity provided in § 6002 fully protects witnesses from incrimination and therefore leaves witnesses no alternative but to testify. *See, e.g., Pillsbury Co. v. Conboy*, 459 U.S. 248, 254–55, 103 S.Ct. 608, 612–13, 74 L.Ed.2d 430 (1983); *In re Daley*, 549 F.2d 469, 478, 481 (7th Cir. 1977), *cert. denied*, 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977); *In re Liddy*, 506 F.2d 1293, 1298, 1301 (D.C.Cir.1974) (en banc). Thus, district courts are without discretion to deny a request by a United States Attorney for an order compelling testimony as long as that request complies with the jurisdictional and procedural requirements of the law. *See United States v. Hollinger*, 553 F.2d 535, 548 (7th Cir. 1977); *Daley*, 549 F.2d at 479; *United States v. Leyva*, 513 F.2d 774, 776 (5th Cir.1975); *In re Grand Jury Investigation*, 486 F.2d 1013, 1016 (3d Cir.1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974).

Of course, should the government choose to prosecute a witness immunized under § 6002, the district court at that point must carefully consider what protective orders are necessary to effectuate the fifth amendment protection. The immunity provided by § 6002 "prohibits the prosecutorial authorities from using the compelled testimony in *any* respect," *Kastigar*, 406 U.S. at 453, 92 S.Ct. at 1661, and "once a defendant establishes that he has testified under a grant of immunity, 'the prosecution [has] the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.'" *Pillsbury*, 459 U.S. at 255, 103 S.Ct. at 613 (quoting *Kastigar*, 406 U.S. at 460, 92 S.Ct. at 1665).

The District Court in this case evidently confused its responsibilities in disposing of a § 6003 request with the responsibilities it would have, by reason of *Kastigar*, at a

suppression hearing. It appears to have reasoned as follows: If production of the tapes is ordered, appellee will be giving incriminating testimony establishing the tapes' existence—something the government has thus far been unable to establish independently. If, in the future, the government decides to prosecute appellee, it will still be unable independently to prove the tapes' existence. However, the government *will* be able to introduce the unprivileged contents of the tapes, which will make proving the existence of the tapes unnecessary. Therefore, the moment appellee produces the tapes—even under a grant of immunity—the right against self-incrimination effectively disappears. The flaw in this reasoning is that the fact that the contents of the tapes are *unprivileged* does not mean that they will necessarily remain *untainted.* If the government prosecutes the appellee in the future, it will have to meet the "heavy burden," *Kastigar,* 406 U.S. at 461, 92 S.Ct. at 1665, of proving that all evidence it seeks to introduce is untainted by the immunized act of production.

The short of the matter is that the scope of immunity afforded by § 6002 is, by definition, whatever is necessary to protect the witness's privilege against self-incrimination; and that § 6003 requires the order to testify to be issued without inquiry as to what that scope might be, leaving that question for subsequent suppression hearings. Thus, if in fact appellee's privilege in the act of production cannot be protected without excluding the contents of the tapes (a point on which we express no opinion) the District Court has the authority to prevent the government from referring to or introducing those contents. But it does not have authority to prevent the government from gaining access to the tapes. *See United States v. Kember,* 648 F.2d 1354, 1361–63 (D.C.Cir.1980) (per curiam); *Liddy,* 506 F.2d at 1301.

The perfect clarity of this matter is obscured only by the decision of a panel of the Seventh Circuit in *United States v. Porter,* 711 F.2d 1397 (7th Cir.1983). There the court reversed a district court order requiring a taxpayer to comply with summonses demanding production of his business records. The court determined that while the contents of the records were not privileged, the act of production would implicitly authenticate the records and therefore incriminate the taxpayer; and that nothing in the immunity statute "would prohibit the government's *reference* to (as opposed to evidentiary 'use' of) [the taxpayer's] having produced the documents." *Id.* at 1404. The court's order

> specifically require[d] that, before the [documents] may be obtained for further investigation, not only must [the taxpayer] be granted statutory use immunity with respect to these documents, but also the court must fashion a protective order forbidding the government from referring in any way before the grand jury or at trial to the fact that [the taxpayer] produced the documents.

*Id.* As our earlier discussion has shown, the latter protection (to the extent it is needed to preserve the witness's privilege against self-incrimination) is automatically included within § 6002 itself. *Porter* is inconsistent not only with *Kastigar* and with the holdings of other Circuits, *see supra* at 181–82, but also with prior expressions of the Seventh Circuit itself. *See Hollinger,* 553 F.2d at 548; *Daley,* 549 F.2d at 479.

\* \* \*

The order of the District Court quashing the subpoena is reversed. The court is instructed to grant the government's § 6003 motion for an order compelling appellee to produce the tapes.

*So ordered.*